[No. F043306. Fifth Dist. Mar. 18, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY DARNELL HAYNIE, Defendant and Appellant.

**COUNSEL**

Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Robert P. Whitlock and Kelly C. Fincher, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VARTABEDIAN, Acting P. J.**—Larry Darnell Haynie appeals from an order extending his commitment to a state hospital pursuant to Penal Code section

1026.5,[1] which authorizes extended commitment for treatment of a person found not guilty of a felony by reason of insanity (§ 1026). The sole issue raised is novel—whether the privilege against self-incrimination bars the prosecution from questioning Haynie about his mental state at the commitment extension hearing. We conclude that it does under the plain language of section 1026.5, subdivision (b)(7).

## BACKGROUND

In 1989, Haynie was found not guilty by reason of insanity of burglary and was committed to the state hospital. On December 18, 2002, the Fresno County District Attorney filed a petition to extend Haynie's commitment pursuant to section 1026.5.

*Statutory Scheme*

Under the statutory scheme for commitment of persons found not guilty of a felony because of legal insanity, a person may not be kept in actual custody longer than the maximum state prison term to which he could have been sentenced for the underlying offense. (§ 1026.5, subd. (a); *People v. Crosswhite* (2002) 101 Cal.App.4th 494, 501 [124 Cal.Rptr.2d 301].) At the end of that period, however, the district attorney may petition to extend the commitment for two years if the person presents a substantial danger of physical harm to others because of a mental disease, defect, or disorder. (§ 1026.5, subd. (b)(1).) When the petition is filed, the court must advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial. (§ 1026.5, subd. (b)(3).) The rules of discovery in criminal cases apply. (*Ibid.*) The trial must be by jury unless waived by both the person and the prosecuting attorney. (§ 1026.5, subd. (b)(4).) The person to be committed is entitled to the rights guaranteed under the federal and state Constitutions for criminal proceedings, and all proceedings must be in accordance with applicable constitutional guarantees. (§ 1026.5, subd. (b)(7).) Once an individual's commitment is extended, the treatment facility is obligated to provide treatment for the underlying causes of the person's mental disorder. (§ 1026.5, subd. (b)(11).)

The district attorney may file subsequent petitions to recommit if the person remains a substantial risk of physical harm to others because of a mental illness. Subsequent proceedings must be conducted in the same manner as the original extended-commitment proceeding. (§ 1026.5, subd. (b)(10).)

---

[1] Further statutory references are to the Penal Code.

*Recommitment Hearing*

In this case, Haynie's maximum term of commitment was due to expire on June 22, 2003. In December 2002, at the request of the medical director for Napa State Hospital, the district attorney filed a petition to extend Haynie's commitment pursuant to section 1026.5. Haynie contested the petition and, through counsel, requested a jury trial.

Haynie does not challenge the sufficiency of the evidence supporting his extended commitment; thus the following summary suffices. Haynie's treating psychiatrists testified he suffered from a major schizo-affective disorder, bipolar type. The disorder made him dangerous because during his manic phases, which were chronic, he was irritable, angry, and paranoid. He interpreted innocuous events as threatening and responded aggressively as if the perceived threat were real. His mental disorder was exacerbated by drug and alcohol abuse and he failed to appreciate that he had a substance abuse problem. The psychiatrists concluded that as a result of Haynie's mental disorder, he was at high risk for acting out and engaging in violent behavior.

Over objection, the prosecution was permitted to call Haynie to testify in its case-in-chief. Haynie testified that he had a mental disorder but he did not believe he posed a danger to others. He stated he did not feel people "gave him enough respect" and, as a result, he ended up fighting them. He had engaged in two fights in the last year, one with his treating physician and another with a patient who had disturbed his sleep. He admitted that when he had been released from the hospital in the past, he had stopped taking his medications or otherwise doing what he was supposed to and had been returned to the hospital.

The jury found that Haynie had a mental disorder and by reason of that disorder represented a substantial danger of physical harm to others. On those findings, the court extended his commitment for two years until June 22, 2005. /

**DISCUSSION**

Haynie contends he should not have been compelled to testify because "when the state deprives him of his constitutional liberty, it may not do so by forcing him to give the testimony that is used against him." Respondent disagrees and contends that the language of section 1026.5, subdivision (b)(7), which states that the person whose commitment is to be extended "shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings," does not include the right against

self-incrimination. The issue we must decide is whether the statutory language, "[t]he person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings," extends an absolute right not to testify to persons during a commitment-extension trial pursuant to section 1026.5.

Section 1026.5, subdivision (b)(7), provides, in relevant part: "The person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees. The state shall be represented by the district attorney who shall notify the Attorney General in writing that a case has been referred under this section. If the person is indigent, the county public defender or State Public Defender shall be appointed. . . . Appointment of necessary psychologists or psychiatrists shall be made in accordance with this article and Penal Code and Evidence Code provisions applicable to criminal defendants who have entered pleas of not guilty by reason of insanity."

■ The goal of statutory construction is to ascertain and effectuate the Legislature's intent. Generally, the words of the statute provide the most reliable indication of legislative intent. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].) If the words are clear and unambiguous, the Legislature is presumed to have meant what it said and no statutory construction is needed. We follow the Legislature's intent and the plain words of its statutes regardless of what we think of the wisdom, expediency, or policy of the enactment. (*People v. Galvan* (1998) 68 Cal.App.4th 1135, 1140 [80 Cal.Rptr.2d 853].) We do not follow the plain meaning rule only if to do so would frustrate the purpose of the statute or lead to an absurd result. (*Ibid.*)

■ Here, the Legislature's words clearly and unambiguously state the person "is entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings." A defendant in a criminal matter has an absolute right not to be called as a witness and not to testify. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15; Evid. Code, § 930.) ■ Under the plain language of the statute, because Haynie is entitled to the same rights guaranteed to a criminal defendant, he should not have been compelled to testify in the prosecution's case at his commitment extension trial.

Several courts have construed this statutory language and concluded that it did not make all rights guaranteed for criminal proceedings applicable in section 1026.5 proceedings. In *People v. Superior Court (Williams)* (1991) 233 Cal.App.3d 477 [284 Cal.Rptr. 601] (*Williams*), the court held that double jeopardy prohibitions do not apply in section 1026.5 proceedings

either by constitutional mandate or by virtue of the language of the statute itself. The court stated that although many constitutional protections relating to criminal proceedings are available in extension proceedings, the application of all such protections was not mandated by section 1026.5 subdivision (b)(7). According to *Williams*, the statutory language that the person "is entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings" merely codifies the application of constitutional protections to extension hearings mandated by judicial decision. *Williams* further found that the language does not afford the protection of constitutional provisions that bear no relevant relationship to the proceedings. (*Williams,* at p. 488.)

The *Williams* court cited several earlier cases addressing the rights guaranteed to a person at an extended-commitment trial pursuant to section 1026.5. In *People v. Henderson* (1981) 117 Cal.App.3d 740, 748 [172 Cal.Rptr. 858], the court held that the admission at trial of Henderson's statements to hospital staff made in the course of routine therapy sessions that he was sexually stimulated by violence did not violate his privilege against self-incrimination. In *People v. Beard* (1985) 173 Cal.App.3d 1113, 1118–1119 [219 Cal.Rptr. 225], the court held that Beard had failed to show that his privilege against self-incrimination had been violated by the court-ordered psychiatric exams. There was no evidence that any question posed by the psychiatrists sought to elicit information that could even remotely subject Beard to criminal prosecution. (Accord, *People v. Poggi* (1980) 107 Cal.App.3d 581, 585–586 [165 Cal.Rptr. 758]; see also *People v. Juarez* (1986) 184 Cal.App.3d 570, 575 [229 Cal.Rptr. 145] [because the recommitment procedures could not disadvantage Juarez in the determination of his criminal guilt, any amendment to them could not, by definition, constitute an ex post facto violation].)

We agree with *Williams, supra,* 233 Cal.App.3d at page 488, that the statutory language of section 1026.5 does not extend the "protection of constitutional provisions which bear no relevant relationship to the proceedings." It was on that basis the *Williams* court and the others cited therein reached the conclusions they did. *Williams* reasonably determined that double jeopardy principles did not prevent the People from petitioning for a writ of mandate to determine whether the trial court erred as a matter of law when it nonsuited their action for a commitment extension under section 1026.5. (*Williams,* at p. 488.) The court reasoned that the constitutional principles of double jeopardy protect a person from being twice put into jeopardy for the same offense. Recommitment proceedings do not adjudicate an offense, thus the bar of double jeopardy had no meaningful application to extension proceedings. (*Id.* at pp. 485–486, 488.)

Likewise, in *People v. Powell* (2004) 114 Cal.App.4th 1153 [8 Cal.Rptr.3d 441], the court held that, notwithstanding the language in section 1026.5,

subdivision (b)(7), the personal waiver of jury trial is not applicable to commitment-extension trials. Common sense dictates that an insane person who is "a substantial danger of physical harm to others" should not be able to veto the informed tactical decision of counsel to waive jury. Powell, who was suffering from a severe mental disorder, was medicated, experiencing mood swings, and was so belligerent and disruptive that he had to be removed from the courtroom. (*Powell*, at p. 1158.) The court concluded that the Legislature must have contemplated that such persons might not be sufficiently competent to determine their own best interests and there was no reason to believe the Legislature intended to leave the decision of whether trial should be before the court or a jury in the hands of such a person. (*Id.* at p. 1159.)

However, we disagree with the broad statement in *Williams, supra,* 233 Cal.App.3d at page 488 that the statutory language "merely codifies the application of constitutional protections to extension hearings mandated by judicial decision." First, if the courts have granted rights to committees under case law, there is no need for the statutory declaration of rights—it is surplusage. Second, that conclusion supplants the legislative rights-inclusive language with a process whereby judges select which rights will apply. We prefer to leave it to the Legislature to be more specific as to which rights apply if it does not intend that all rights apply. The fact the Legislature chose to spell out the rights of jury unanimity and the beyond a reasonable doubt burden of proof does not undermine our conclusion. Those standards are not expressly set forth in the Fifth or Sixth Amendment of the United States Constitution or under analogous California constitutional provisions. Thus, the Legislature may have perceived a need to specifically add those mandates. Finally, to the extent that case law holds that certain rights apply to extended-commitment proceedings under constitutional principles, those holdings do not prevent the Legislature from providing additional rights to civil committees.

The right to not be compelled to testify against oneself is clearly and relevantly implicated when a person is called by the state to testify in a proceeding to recommit him or her even if what is said on the witness stand is not per se incriminating. By calling the person in its case-in-chief, the state is essentially saying that his or her testimony is necessary for the state to prove its case. We have no doubt that a committee so compelled to testify is prejudiced under these circumstances. The California Supreme Court noted in *Cramer v. Tyars* (1979) 23 Cal.3d 131 [151 Cal.Rptr. 653, 588 P.2d 793] that permitting the jury to observe the person sought to be committed and to hear him speak and respond provided "the most reliable proof and probative indicator of the person's present mental condition." (*Id.* at p. 139.) As such, we cannot conclude that compelling Haynie to testify, even if his testimony was in some regards cumulative to that of other witnesses, was harmless error.

## DISPOSITION

The judgment is reversed.

Buckley, J., and Cornell, J., concurred.