Filed 4/25/13

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>PETER FREIDERICH MORTIMER,<br><br>        Defendant and Appellant. | H037530<br>(Santa Clara County<br>Super. Ct. No. 190802) |


## I. STATEMENT OF THE CASE

In 1996, the court found defendant Peter Freiderich Mortimer not guilty by reason of insanity (NGI) of assault with a deadly weapon, battery on a peace officer, and resisting arrest and committed him to the Department of Mental Health (Department) for treatment at Napa State Hospital (NSH). (Pen. Code, §§ 148, subd. (a), 242, 243, subd. (b), 245, subd. (a)(1), 1026.5, subd. (a).)[1] Since then, his commitment has been extended five times. (§ 1026.5, subd. (b).) On May 18, 2011, before the last extension expired, the Santa Clara County District Attorney filed a petition to extend it again. At a pretrial hearing on September 9, 2011, defense counsel advised the court that defendant

---

[1] "Technically, once a defendant has been found not guilty by reason of insanity, he is no longer a criminal defendant, but a person subject to civil commitment." (*People v. Lara* (2010) 48 Cal.4th 216, 222, fn. 5.) We shall refer to such persons as defendants or NGIs rather than "committees" or "persons committed."

All unspecified statutory references are to the Penal Code.

wanted a bench trial. On October 20, 2011, after the trial, the court sustained the petition and extended defendant's commitment to December 5, 2013.

On appeal from the extension order, defendant claims the court violated his constitutional and statutory rights by failing to advise him of his right to a jury trial and conducting a bench trial without obtaining his express, personal waiver.

We affirm the extension order.

## II. THE EXTENSION HEARING

Dr. Teo Ernst, Ph.D., defendant's treating psychologist at NSH, testified as an expert in the diagnosis and treatment of mental disorders and risk assessment. He explained that defendant suffered from schizo-affective disorder, bipolar type, and poly-substance dependence. Defendant also had hepatitis C, diabetes, dyslipidmia, and tachycardia. In addition, he had "intellectual deficits" which caused problems with memory, concentration, attention and "executive functioning." These additional problems made it difficult for defendant to understand the factors that contributed to his violent conduct and hindered his ability to develop a plan to maintain stability and safety in the community. Defendant also continued to experience auditory and command hallucinations, including a recent hallucination in which a voice directed him push a nurse down some stairs. Defendant did not act on that hallucination. In addition, defendant reported having "acid flashbacks" which, according to Dr. Ernst, suggested that he had visual hallucinations as well.

Dr. Ernst testified that defendant had recently acknowledged having a mental disorder. However, he was unable to identify its symptoms without being prompted. Moreover, defendant still maintained delusional thinking about the circumstances of his commitment offense. Dr. Ernst reported that defendant had completed preliminary work on two parts of a wellness recovery action plan (WRAP), but the parts were disorganized and not yet integrated into a comprehensive plan. Defendant had also participated two groups run by Dr. Ernst, but he had trouble staying focused on course material and acting

2

appropriately. Defendant had made progress in his substance abuse treatment and had maintained sobriety in the least restrictive environment at NSH. He understood the negative impact that drugs had had on him, and he had done substantial work on two relapse prevention plans. Nevertheless, he talked about all the drugs he could use in the community.

Dr. Ernst opined that defendant currently posed a substantial risk of danger to others. His opinion was based on defendant's failure to take medication without prompting, which increased the risk that he would not do so on his own. Dr. Ernst also noted defendant's cognitive limitations and disorganization. He said that defendant lacked insight into his drug use, the relationship between his mental illness and his violent behavior, and the symptoms of his mental disorder. He further noted that defendant lacked empathy for his victims and did not appreciate how dangerous he became when he was under the influence of drugs and alcohol and in a psychotic state. Dr. Ernst was also concerned that defendant would again use drugs and alcohol, which would substantially increase the risk that he would become destabilized, psychotic, and violent.

Defendant did not testify or present any evidence.

### III. AN NGI COMMITMENT AND EXTENSION

Under the statutory scheme for NGI commitments, a defendant who has been committed to a state hospital after being found NGI may not be kept in actual custody longer than the maximum state prison term to which he or she could have been sentenced for the underlying offense. (§ 1026.5, subd. (a)(1).) At the end of that period, the district attorney can seek a two-year extension by filing a petition alleging that the defendant presents a substantial danger of physical harm to others because of his or her mental disease, defect, or disorder. (§ 1026.5, subds. (b)(1)-(2).) At that time, the court is required to "advise the person named in the petition . . of the right to a jury trial" (§ 1026.5, subd. (b)(3)) and conduct a jury trial "unless waived by both the person and

3

the prosecuting attorney" (§ 1026.5, subd. (b)(4)). The person is "entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings," and all proceedings must "be in accordance with applicable constitutional guarantees." (§ 1026.5, subd. (b)(7).)[2]

## IV. FAILURE TO ADVISE

Defendant contends that the court erred in failing to advise him of the right to a jury trial. He argues that because the record does not contain evidence that he was advised by anyone, he could not have waived the right and was therefore erroneously denied a jury trial.

As noted, section 1026.5, subdivision (b)(3) provides, "When the petition is filed, the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial."

The record does not reflect that the court directly advised defendant when the petition was filed or did so at any time thereafter. The court's failure to comply with the statutory directive is understandable because when the petition was filed, defendant was at NSH, defense counsel thereafter waived defendant's presence at all of the pretrial

---

[2] Section 1026.5, subdivision (b)(3) provides: "When the petition is filed, the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial. The rules of discovery in criminal cases shall apply. If the person is being treated in a state hospital when the petition is filed, the court shall notify the community program director of the petition and the hearing date.

Section 1026.5, subdivision (b)(4) provides: "The court shall conduct a hearing on the petition for extended commitment. The trial shall be by jury unless waived by both the person and the prosecuting attorney. The trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless that time is waived by the person or unless good cause is shown.

Section 1026.5, subdivision (b)(7) provides, in relevant part: "The person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees. The state shall be represented by the district attorney who shall notify the Attorney General in writing that a case has been referred under this section. If the person is indigent, the county public defender or State Public Defender shall be appointed."

4

proceedings, the court did not order defendant's appearance for the purpose of an advisement, and defendant first appeared on the day of the bench trial. However, the court's failure to advise does not compel reversal.

Before any judgment can be reversed for error under state law, it must appear that the error complained of "has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801.) This means that reversal is justified "when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Clearly counsel knew that defendant had the right to a jury trial because he advised the court that defendant wanted a bench trial. Moreover, where, as here, counsel waives a defendant's presence at all pretrial hearings, effectively preventing a direct judicial advisement before trial, the court may reasonably expect counsel to discuss all pertinent matters that will arise or that have arisen in pretrial hearings, including the right to a jury trial and whether to have one. "Like all lawyers, the court-appointed attorney is obligated to keep her client fully informed about the proceedings at hand, *to advise the client of his rights*, and to vigorously advocate on his behalf. [Citations.] The attorney must also refrain from any act or representation that misleads the court. (Bus. & Prof.Code, § 6068, subd. (d); Rules Prof. Conduct, rule 5–200(B).)" (*In re Conservatorship of Person of John L.* (2010) 48 Cal.4th 131, 151-152 (*John L.*), italics added.) Moreover, absent a showing to the contrary, "[a] reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211; *Conservatorship of Ivey* (1986) 186 Cal.App.3d 1559, 1566; e.g., *Conservatorship of Mary K.* (1991) 234

Cal.App.3d 265, 272 (*Mary K.*) [where no evidence to the contrary, court may presume counsel discussed jury waiver with client before waiving on client's behalf].)

Furthermore, the record does not suggest that defendant was unaware of his right to a jury trial. This was defendant's sixth commitment extension proceeding. The record also does not suggest that defendant wanted a jury trial or was unaware that counsel intended to waive it. Indeed, when counsel did so, he said, "Mr. Mortimer would like a court trial," which, if anything, implies that counsel acted with defendant's knowledge and consent. Last, we note that when he appeared at trial, defendant did not object or express any concern or surprise that there was no jury.[3]

Finally, a single opinion by a psychiatric expert that a defendant is currently dangerous due to a mental disorder can constitute substantial evidence to support the extension of a commitment. (*People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165; *People v. Bowers* (2006) 145 Cal.App.4th 870, 879.)

Dr. Ernst's opinion constitutes overwhelming evidence to support the order extending defendant's commitment. Defendant had a serious mental disorder, which he had only recently acknowledged, and suffered auditory and perhaps visual hallucinations. His intellectual deficits made it difficult for him to stay focused and understand his disorder, its symptoms, and its triggers, which in turn had hindered his ability to develop a comprehensive and integrated plan to maintain his stability in the community. He did

---

[3] However, if, in fact, defendant was unaware of his right to a jury trial and would have opposed or did oppose counsel's waiver, but the evidence to establish these facts lay outside the record on appeal, defendant had an alternative a remedy.

As a general rule, claims grounded in facts outside the record can be raised by habeas petition. (See *People v. Gray* (2005) 37 Cal.4th 168, 211; *In re Bower* (1985) 38 Cal.3d 865, 872.) A person improperly committed may resort to habeas corpus to challenge an involuntary civil commitment. (See Pen. Code, § 1473, subd. (a) ["Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint."]; see also *In re Michael E.* (1975) 15 Cal.3d 183.)

We observe that defendant has not sought habeas relief.

6

not appreciate how dangerous he became when his symptoms appeared, and he needed prompting to take his medication. Moreover, although he had been able to maintain sobriety within the hospital environment, there was a substantial risk of his becoming destabilized, psychotic, and violent if he used drugs and alcohol.

Defendant offered no evidence or testimony to contradict or undermine Dr. Ernst's testimony.

Given the record, we do not find it reasonably possible, let alone reasonably probable, that defendant would have obtained a more favorable result had the court ordered his presence at a pretrial hearing and directly advised him of his right to a jury trial. (*People v. Watson, supra,* 46 Cal.2d at p. 836; cf. *People v. McClellan* (1993) 6 Cal.4th 367, 377, 378 [failure to advise about sex registration requirement harmless].)[4]

Citing *Hicks v. Oklahoma* (1980) 447 U.S. 343 (*Hicks*), defendant asserts that "when a state statute provides for a particular procedure, especially with respect to a liberty interest, failure to follow that procedure is a violation of due process under the Fourteenth Amendment." Thus, he argues that in failing to follow the advisement directive, the court violated his constitutional right to due process. Defendant's reliance on *Hicks* is misplaced.

The United States Supreme Court has not cited *Hicks* for the proposition asserted by defendant. "[The United States Supreme Court has] long recognized that a 'mere error of state law' is not a denial of due process. [Citation.] If the contrary were true, then 'every erroneous decision by a state court on state law would come [to this Court] as

---

[4] We do not intend to suggest that it was improper or inappropriate for counsel to waive defendant's presence or that the court had a duty to order defendant's presence in order to directly advise him. However, a direct advisement is not the only way for the court to ensure that an NGI is made aware of the right to a jury trial. In our view, the practical difficulty in advising an NGI committed to a state hospital could easily be solved with an advisement and waiver form for the NGI to read and sign. (See *People v. Ramirez* (1999) 71 Cal.App.4th 519, 521-522 [waiver form proper substitute for judicial advisement].)

a federal constitutional question.' [Citations.]" (*Engle v. Isaac* (1982) 456 U.S. 107, 121, fn. 21.) Due process does not safeguard "the meticulous observance of state procedural prescriptions . . . . " (*Rivera v. Illinois* (2009) 556 U.S. 148, 158 ["Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution].)

In *People v. Montoya* (2001) 86 Cal.App.4th 825 (*Montoya*), the court rejected the mentally disordered offender's (MDO) claim that the federal due process clause guaranteed an MDO the right to a jury trial. " 'Where . . . a State has provided for the *imposition of criminal punishment* in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, [citation], and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.' [Citation.] A jury sitting in a civil hearing pursuant to sections 2970 and 2972 does not impose criminal punishment and has no power to determine the extent to which the defendant will be deprived of his liberty. Defendant's jury trial interest thus is, in this case, 'merely a matter of state procedural law' and does not implicate the Fourteenth Amendment. [Citation]. (*Id*. at pp. 831-832, quoting *Hicks, supra,* 447 U.S. at p. 340.)

*Montoya's* analysis applies to defendant's claim that due process guaranteed the right to *a jury advisement.* The required advisement does not create a state liberty interest, and a court's failure to advise does not deprive defendant of any liberty interest. (See *Swarthout v. Cooke* (2011) ___ U.S. ___ [131 S.Ct. 859, 862] ["When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures"]; e.g., *People v. Letner* (2010) 50 Cal.4th 99, 135.) Rather, like the

8

right to a jury trial itself, the required advisement is merely a matter of state procedural law.

## V. PERSONAL WAIVER AND COUNSEL'S AUTHORITY TO WAIVE

Defendant contends counsel's waiver was ineffective, and the court erred in accepting it, because section 1026.5, subdivisions (b) requires a jury trial unless the NGI personally and expressly waives a jury trial in open court. We disagree.

The federal and state Constitutions guarantee the right to a jury trial in criminal cases, and that right can be waived only by the defendant personally. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 16; *People v. Collins* (2001) 26 Cal.4th 297, 304-308; *People v. Ernst* (1994) 8 Cal.4th 441, 446.) However, the right and the personal-waiver rule do not directly apply in NGI commitment trials because such proceedings are fundamentally civil, not criminal. (*People v. Powell* (2004) 114 Cal.App.4th 1153, 1157 (*Powell*); *People v. Superior Court* (*Williams*) (1991) 233 Cal.App.3d 477, 485 (*Williams*); cf. *People v. Rowell* (2005) 133 Cal.App.4th 447, 451 (*Rowell*) [constitutional right not applicable in civil proceedings to commit a defendant as a sexually violent predator (SVP)]; *Montoya, supra,* 86 Cal.App.4th at pp. 829-830 [same re proceeding to commit MDO]; *People v. Otis* (1999) 70 Cal.App.4th 1174, 1176 (*Otis*) [same].)

The federal Constitution also guarantees the right to a jury trial in civil cases, but that guarantee is not applicable to the states. (U.S. Const., 7th Amend. [right to a jury trial]; *McDonald v. City of Chicago* (2010) ___ U .S. ___ [130 S.Ct. 3020, 3034-3035, fn. 13] [not applicable to states]; *Jehl v. Southern Pac. Co.* (1967) 66 Cal.2d 821, 827 [same]; *Hung v. Wang* (1992) 8 Cal.App.4th 908, 927 [same].)

The state Constitution guarantees the right to a jury trial in civil actions but only if the right existed at common law in 1850, when the Constitution was first adopted. (Cal. Const., art. I, § 16; *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8.) A civil commitment trial, such as an NGI extension trial, is "initiated by a petition

9

independently of a pending action and [is] of a character unknown at common law." (*Rowell, supra,* 133 Cal.App.4th at p. 451.) It is neither an action at law nor a suit in equity and is instead considered a "special proceeding." (*Montoya, supra,* 86 Cal.App.4th at p. 829; see *Tide Water Assoc. Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 822; *Le Louis v. Superior Court* (1989) 209 Cal.App.3d 669, 678; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 65, subd. 20, pp. 139-140; Code Civ. Proc., §§ 21-23.)[5]

In a "special proceeding," the right to a jury trial is generally a matter of legislative grant, and not constitutional right. (*Corder v. Corder* (2007) 41 Cal.4th 644, 656, fn. 7 [state constitutional right to a jury trial not applicable in special proceedings]; *Cornette v. Department of Transp.* (2001) 26 Cal.4th 63, 76; *Agricultural Labor Relations Bd. v. Tex-Cal. Land Management, Inc.* (1987) 43 Cal.3d 696, 707; *Rowell, supra,* 133 Cal.App.4th at p. 452; *People v. Williams* (2003) 110 Cal.App.4th 1577, 1590 [no constitutional right to trial in civil commitment proceedings].)[6]

---

[5] Judicial remedies are divided into two classes: "[a]ctions" and "[s]pecial proceedings." (Code Civ. Proc., § 21.) An "action" is statutorily defined as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code of Civ. Proc. § 22.) "Every other remedy is a special proceeding." (Code of Civ. Proc., § 23.) "Actions are of two kinds: [¶] 1. Civil; and [¶] 2. Criminal." (Code of Civ. Proc., § 24.)

Special proceedings include SVP commitment trials (*People v. Yartz* (2005) 37 Cal.4th 529, 535); competence trials (*People v. Masterson* (1994) 8 Cal.4th 965, 974 (*Masterson*)); trials extending a juvenile commitment (*In re Gary W.* (1971) 5 Cal.3d 296, 309); narcotics addict commitment trials (*In re De La O* (1963) 59 Cal.2d 128, 150; mentally commitment trials (*Bagration v. Superior Court* (2003) 110 Cal.App.4th 1677, 1685, fn. 7).

[6] Even if the state Constitution did guarantee the right to a jury trial in an NGI commitment proceeding, defendant's claim would fail because constitutional right "may be waived by the consent of the parties expressed as prescribed by statute," and the general rule is that where the constitutional right exists, it can be waived by either a party *or the party's attorney*. (Cal. Const., art. I, § 16 [right to jury trial]; see Code of Civ.

10

Generally, in a special proceeding, the statutory right to jury trial may be waived by either a party or counsel unless otherwise provided by statute. (See *John L., supra,* 48 Cal.4th 131, 148.) Thus, we turn to the statutory language to see whether it excludes waivers by counsel.

As noted, section 1026.5, subdivision (b)(4) requires the court to conduct a jury trial "unless waived by both the person and the prosecuting attorney." The question before us turns on the meaning of the term "the person." Does it refer literally and exclusively to "the person"; or does it more broadly include the person's attorney? The issue is not new, and every court that has addressed it has adopted the broader view.

In *Otis, supra,* 70 Cal.App.4th 1174, the court dealt with section 2966, subdivision (b), which requires a jury trial when a person challenges his or her MDO certification unless the jury is "waived by both the person and the district attorney." There, counsel waived a jury trial. The defendant objected and requested a jury trial, but at the time, he was delusional and said he was being sexually assaulted by invisible police. The court denied the request. (*Id.* at pp. 1175-1176.)

In upholding counsel's waiver, the court found that "nothing in the requirement that the waiver must be by 'the person' precludes the person's attorney from acting on his behalf" and noted that "[t]he Legislature did not say the waiver had to be made 'personally.' " (*Otis*, *supra*, 70 Cal.App.4th at p. 1176.) The court opined that if the Legislature had intended to require a personal waiver, it would have made its intent clear and unambiguous. (*Ibid*.)

---

Proc, § 631 [prescribing types of waiver]; *Zurich General Acc. & Liability Ins. Co. v. Kinsler* (1938) 12 Cal.2d 98, 105, overruled on other grounds in *Fracasse v. Brent* (1972) 6 Cal.3d 784, 792; [waiver by party or counsel]; *Cadle Co. v. World Wide Hospitality Furniture, Inc.* (2006) 144 Cal.App.4th 504, 510; *Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 148; see also Code Civ. Proc., § 283, subd. (1) [counsel has authority to bind client in any of the steps of an action].)

11

The court further explained that "[s]ection 2966 concerns persons who have been found by the Board of Prison Terms to be mentally disordered. The Legislature must have contemplated that many persons, *such as Otis*, might not be sufficiently competent to determine their own best interests. There is no reason to believe the Legislature intended to leave the decision on whether trial should be before the court or a jury in the hands of *such a person*." (*Otis, supra*, 70 Cal.App.4th at p. 1177, italics added.)

In *Montoya, supra,* 86 Cal.App.4th 825, the court reached the same conclusion concerning identical language in section 2972, subdivision (a), which requires a jury trial on an MDO commitment extension unless waived "by the person and the district attorney." There too, counsel waived a jury. (*Id*. at pp. 828-829.)

The court concluded, as we have, that the constitutional requirement of a personal waiver in criminal cases was inapplicable because a commitment trial is fundamentally a civil proceeding. (*Montoya, supra,* 86 Cal.App.4th at pp. 829-830.) The court further observed that in both civil actions, where there is a state constitutional right to a jury trial, and in ancillary criminal proceedings, where the right to a jury trial is statutory, not constitutional, a jury trial can be waived by either the client or counsel. (*Id*. at pp. 829-830.) Accordingly, the court looked to the waiver provision to see if it permitted or prohibited waivers by counsel. (*Id*. at p. 830.)

In upholding counsel's waiver, the court followed *Otis.* It too noted that the statutory language did not expressly require a personal waiver or clearly preclude a waiver by counsel. The court also agreed that the Legislature could not have intended to require a personal waiver and thereby deny counsel the authority to act on behalf of an incompetent MDO such as the MDO in *Otis*. (*Montoya, supra*, 86 Cal.App.4th at pp. 830-831.)

The court acknowledged that "a person could be mentally disordered for some purposes and not for others." (*Montoya, supra*, 86 Cal.App.4th at p. 831.) However, it noted that there, the defendant's mind was not functioning normally, and he had

12

repeatedly and recently demonstrated poor judgment and aberrant behavior. In upholding counsel's waiver, the court found "no reason to believe that defendant was capable of making a reasoned decision about the relative benefits of a civil jury trial compared to a civil bench trial." (*Ibid*.)

This brings us to *Powell, supra,* 114 Cal.App.4th 1153, which is directly on point. There, the NGI objected to counsel's waiver and requested a jury. When the court denied the request, the defendant became so argumentative, belligerent, and disruptive that he had to be removed from the courtroom. On appeal, the defendant claimed that counsel's waiver was ineffective because section 1026.5, subdivision (b)(4) required his personal waiver. (*Id*. at pp. 1157-1158.)

In rejecting this claim, the court cited *Otis* and noted that "[t]he Legislature, in enacting section 1026.5, did not say that the jury waiver must be 'personally' made by the NGI committee." (*Powell, supra,* 114 Cal.App.4th at p. 1159.) Moreover, mirroring the *Otis* court's view concerning incompetent persons, the court opined generally that "[a]n insane person who is 'a substantial danger of physical harm to others' [citation] should not be able to veto the informed tactical decision of counsel." (*Id*. at p. 1158.) The court pointed out that the defendant had been found insane twice, medical staff had diagnosed him with paranoid schizophrenia, and there was no evidence he had regained his sanity. The court further noted that the defendant had a history of violence, believed certain people should be killed, and sought release to do so. (*Id*. at p. 1158.) The court asked, "Can such a person intelligently invoke or waive the right to a jury trial? Is such a person competent to meaningfully understand who should make the determination of whether his commitment should be extended?" (*Ibid*.) The court answered, "Common sense dictates that appellant should not be able to veto his attorney's decision to waive a jury. The record demonstrates that appellant was suffering from a severe mental disorder. On the day of the purported demand for jury, appellant was medicated,

experiencing mood swings, and was so belligerent and disruptive that he had to be removed from the courtroom." (*Ibid.*)

In support of its analysis, the court cited *People v. Angeletakis* (1992) 5 Cal.App.4th 963 (*Angeletakis*). There, the defendant faced a trial to extend his NGI commitment and sought a preliminary determination of his competence. (See § 1368.) The court noted that section 1368 did not apply in civil proceedings and opined that an NGI did not have to be competent at a trial to extend his or her commitment. (*Id.* at pp. 967-968; *Juarez v. Superior Court* (1987) 196 Cal.App.3d 928, 931-932 [same]; cf. *People v. Moore* (2010) 50 Cal.4th 802, 829 [trial on commitment as SVP does not require the defendant's competence].) As the court explained, "Angeletakis will be confined and receive treatment for his mental condition whether his commitment is extended under section 1026.5 or such proceedings are suspended under section 1368. While we appreciate the distinction between mental competence to stand trial and dangerousness to others due to a mental disease, defect, or disorder, we think the interests of a person facing a commitment extension are adequately protected by competent counsel and the other procedural safeguards afforded him. Requiring the court to suspend proceedings until the committee is able to understand the nature of the proceedings and assist in the conduct of his 'defense' adds minimal protection in this context, especially when balanced against the administrative burdens involved." (*Angeletakis, supra,* 5 Cal.App.4th at pp. 970-971, fn. omitted.)

The *Powell* court read *Angeletakis* "for the principle that an NGI committee who is not mentally competent must act through counsel. If the person is not competent to waive jury at the extension trial, his or her attorney may waive jury on his or her behalf. *That is the case here.*" (*Powell, supra,* 114 Cal.App.4th at p. 1158, italics added.)

Sections 1026.5, 2966, and 2972 use the same language to address the same subject of jury waiver. The unanimity of interpretation in *Otis*, *Montoya*, and *Powell* reflects the established rule that ordinarily "[w]ords or phrases common to two statutes

14

dealing with the same subject matter must be construed in pari materia to have the same meaning." (*Housing Authority v. Van de Kamp* (1990) 223 Cal.App.3d 109, 116; *People v. Lamas* (2007) 42 Cal.4th 516, 525.)

We agree with those courts' view of the statutory language. It does not expressly require a "personal" waiver by the NGI. The term "the person" in the phrase "unless waived by both the person and the prosecuting attorney" (§ 1026.5, subd. (b)(4)) does not automatically or necessarily convey the notion that the only valid waiver is one "personally" made by the NGI. Nor does the waiver provision clearly reflect a legislative intent to impose such a limitation or preclude waivers by counsel on behalf of an NGI. Finally, we too observe that the Legislature knows how to require a personal waiver, and when it has done so, it has used clear and unambiguous language. (E.g., § 861, subd. (a)(1) [requiring personal waiver of statutory right to continuous preliminary examination]; § 977, subd. (b)(1) [same re waiver of presence at arraignment]; Welf. & Inst. Code, § 1801.5 [same re right to a jury in trial to extend juvenile detention].)

Furthermore, interpreting the language to exclude waivers by counsel results in consequences that, in our view, are illogical and anomalous and therefore, to be avoided. (*People v. Martinez* (1995) 11 Cal.4th 434, 448.)

First, we note that for a variety of reasons, NGIs being treated in state hospitals often choose not to appear until the day of trial, courts do not automatically order them transported to court for every pretrial hearing, and counsel routinely waive the defendants' presence at hearings which involve technical, procedural, and scheduling matters. Such was the case here. Given these practical and logistical issues, counsel must be able to act on the NGI's behalf in his or her absence. We cannot conceive of a logical reason to prohibit counsel from waiving a statutory right to a jury trial at the NGI's direction or with the NGI's express authorization but in his or her absence and to instead compel the court to order the NGI's transportation and presence solely to secure a

15

personal waiver. This is especially so because, as noted, counsel can waive a client's more fundamental constitutional right to a jury in civil actions.

We further note that competency to stand trial is not a prerequisite in a civil proceeding to commit a person who is dangerous due to mental illness. (E.g., *People v. Angeletakis, supra,* 5 Cal.App.4th at pp. 967-968 [NGI commitment]; *People v. Moore, supra,* (2010) 50 Cal.4th at p. 829 [SVP commitment].) However, a waiver "is the 'intentional relinquishment or abandonment of a known right.' [Citations.]" (*United States v. Olano* (1993) 507 U.S. 725, 733; *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 521.) To be valid, the waiver of a statutory right must be knowing, intelligent, and voluntary. (*In re Hannie* (1970) 3 Cal.3d 520, 526-527; *People v. Charles* (1985) 171 Cal.App.3d 552, 559.) As *Otis, Montoya, and Powell* observe, some defendants, like the defendants in those cases, may be so delusional or otherwise affected by their mental disorders that they lack the capacity to know what is in their own best interests and make a rational decision. Under such circumstances, an NGI may not be able to knowingly and intelligently waive the right to a jury trial. If an NGI is incompetent, and in a particular case counsel believes that a jury waiver is in the NGI's best interests, requiring that defendant's personal waiver would undermine counsel's ability to protect the NGI's interests by preventing counsel from waiving a jury on his or her behalf; and it would mechanically require the court to conduct a jury trial or give the incompetent defendant veto power over counsel's informed determination.[7]

In our view, preventing counsel from waiving a jury at the NGI's direction or with the NGI's consent and preventing counsel from doing so on behalf of an incompetent NGI are anomalous consequences that would flow from interpreting the waiver provision

_____

[7] The anomaly of forcing an incompetent person to face a jury trial even when counsel concludes that it would be against the person's best interests would not arise from the personal waiver requirement in criminal cases because an incompetent defendant cannot be tried at all. (§ 1368; see also *Drope v. Missouri* (1975) 420 U.S. 162, 172.)

16

literally and restrictively to require a personal waiver. For that reason, we consider it unreasonable to infer such a restrictive legislative intent from the statutory language. (Cf. *Mary K., supra,* 234 Cal.App.3d at p. 271 [rejecting claim that counsel's waiver at conservatee's direction was ineffective because personal waiver was required].)

We point out that in construing statutes, "[w]e may not under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349; accord *Estate of Griswold* (2001) 25 Cal.4th 904, 917.) Nor may we insert requirements or limitations that would cause the statute to conform to a presumed intent that is not otherwise manifest in the existing statutory language. (*Citizens to Save California v. California Fair Political Practices Com.* (2006) 145 Cal.App.4th 736, 747-748, *Tain v. State Bd. of Chiropractic Examiners* (2005) 130 Cal.App.4th 609, 617.)

Given our analysis of the statutory language, policy considerations, and potential consequences, we decline to insert a personal waiver requirement into the statute. Rather, we conclude that the waiver provision permits counsel to waive a jury at an NGI's direction, with an NGI's knowledge and consent, or, as in *Powell*, on behalf of an incompetent NGI.[8]

Defendant claims that section 1026.5, *subdivision (b)(7)* incorporates a personal waiver requirement. That subdivision provides, in relevant part, that the defendant "shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees." (§ 1026.5, subd. (b)(7).)

---

[8] In the latter situation, we believe that counsel may do so even over the objection of an incompetent defendant. (E.g., *Powell, supra*, 114 Cal.App.4th at pp. 1156, 1158-1159; cf. *Otis, supra*, 70 Cal.App.4th at pp. 1176-1177 [waiver over objection of incompetent MDO]; *Masterson, supra,* 8 Cal.4th 965, 972 [waiver over objection of defendant whose competence has been called into question].)

Every court that has analyzed the scope of this provision has concluded that it does not incorporate all federal and state constitutional procedural rights.  (*Williams, supra*, 233 Cal.App.3d at pp. 485-488; *Powell, supra*, 114 Cal.App.4th at pp. 1157-1158; *People v. Haynie* (2004) 116 Cal.App.4th 1224, 1229-1230 (*Haynie*); *People v. Lopez* (2006) 137 Cal.App.4th 1099, 1108-1116 (*Lopez*); see *People v. Henderson* (1981) 117 Cal.App.3d 740, 746-748 (*Henderson*) [same conclusion re identical language in former Welf. & Inst. Code, § 6316.2, subd. (e)]; cf. with *Joshua D. v. Superior Court* (2007) 157 Cal.App.4th 549, 560-561 [distinguishing § 1026.5, subd. (b)(7) from Welf. & Inst. Code, § 1801.5, which grants juveniles "*all* the rights guaranteed under the federal and state Constitutions for criminal proceedings" in commitment extension trials (italics added)].)  On the other hand, courts agree that at a minimum section 1026.5, subdivision (b)(7) incorporates those constitutionally provided procedural rights that bear a relevant relationship to commitment proceedings.  (*Williams, supra,* 233 Cal.App.3d at pp. 485-488; *Powell, supra,*114 Cal.App.4th at pp. 1157-1158; *Haynie, supra,* 116 Cal.App.4th 1224, 1229-1230; *Lopez, supra,* 137 Cal.App.4th 1099, 1008-1116.)

In *Williams, supra*, 233 Cal.App.3d 477, the court opined that the subdivision simply "codifies the application of constitutional protections to extension hearings mandated by judicial decision.  It does not extend the protection of constitutional provisions which bear no relevant relationship to the proceedings.  [Citation.]  Thus, for example, ex post facto principles are not applicable to extension proceedings.  [Citation.]  Neither is the privilege against self-incrimination applicable to court-ordered psychiatric examinations.  [Citations.]."  (*Id.* at p. 488; accord, *Lopez, supra,* 137 Cal.App.4th at pp. 1111-1115; cf. *Henderson, supra,* 117 Cal.App.3d at pp. 746-748.)  The court held that the provision also did not incorporate constitutional protection against double jeopardy.  The court reasoned that double jeopardy prohibitions were inapplicable because they are designed to protect a person from being criminally prosecuted more than once for the same offense.  Recommitment proceedings do not adjudicate an offense, thus

18

the bar of double jeopardy has no meaningful application to extension proceedings. (*Williams, supra*, 233 Cal.App.3d at pp. 485-486, 488.)

In *Powell, supra*, 114 Cal.App.4th 1153, the court agreed with *Williams* that section 1026.5, subdivision (b)(7) did not incorporate all constitutional procedural safeguards and held that the subdivision did not incorporate the constitutional personal waiver requirement in criminal cases. As discussed above, the court opined that an incompetent NGI must act through counsel, and therefore, counsel may waive a jury on his or her behalf. (*Powell, supra,* 114 Cal.App.4th at pp. 1158-1159.)

We agree with *Powell.* The anomalous consequences that would result from interpreting the waiver provision to require a personal waiver and exclude waivers by counsel would likewise result from interpreting section 1026.5, subdivision (b)(7) to do so. Section 1026.5, subdivision (b)(3) provides the right to counsel, a jury trial, and criminal discovery. Subdivision (b)(7) reflects an intent to protect a defendant's interests by providing additional procedural safeguards relevant to such proceedings. In our view, it makes no sense to interpret the provision to prevent counsel from waiving a jury at the NGI's direction or with his or her knowledge and consent. Similarly, it makes no sense to interpret a provision designed to provide *additional* protection in a way that could reduce counsel's ability to take action that would protect the interests of an NGI who is delusional or otherwise incompetent.

We agree with *Powell* for two other reasons. Even in a criminal prosecution, where a defendant must personally waive the state and federal constitutional rights to a jury trial, there is no requirement that a *statutory* right to a jury determination of certain issues be personally waived. (*People v. French* (2008) 43 Cal.4th 36, 46-47; see *Montoya, supra,* 86 Cal.App.4th at p. 829.) Thus, for example, a defendant need not personally waive the statutory right to a jury on prior prison term allegations (*People v. Vera* (1997) 15 Cal.4th 269, 278, abrogated on another point in *Apprendi v. New Jersey* (2000) 530 U.S. 466.); the statutory right to have jury determine sentence enhancement

allegations (*People v. Wims* (1995) 10 Cal.4th 293, 309, overruled on another point in *People v. Sengpadychith* (2001) 26 Cal.4th 316, 326); the statutory right to have jury determine competence to stand trial on criminal charges (*Masterson, supra*, 8 Cal.4th at p. 972); or the statutory right to have same jury determine current charges and prior allegations (*People v. Saunders* (1993) 5 Cal.4th 580, 589, fn. 5). (See also *People v. Hinton* (2006) 37 Cal.4th at 839, 874-875 [statutory right to a separate proceeding on the prior-murder-conviction special-circumstance allegation].)

With this in mind, we do not find a clear legislative intent to attach the constitutional personal waiver requirement to the statutory right to jury trial.

Second, section 1026.5, subdivision (b)(4) specifically deals with the waiver of a jury trial and it does not expressly require a personal waiver or prohibit a waiver by counsel. Section 1026.5, subdivision (b)(7), on the other hand, is a general statute and does not specifically refer to any particular rights or the waiver of rights.

It is a settled rule that "[a] specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to include the subject to which the specific provision relates. [Citation.]" (*People v. Tanner* (1979) 24 Cal.3d 514, 521.) Under the circumstances, we doubt the Legislature intended the general subdivision (b)(7) to add by implication a personal waiver requirement that it did not expressly include in the specific subdivision dealing with waiver.

Defendant urges us not to follow *Powell*. He notes that in *Haynie, supra,* 116 Cal.App.4th 1224, the court rejected *Williams'* view, reiterated in *Powell*, that section 1026.5, subdivision (b)(7) merely codified certain judicially recognized constitutional protections. (*Haynie, supra,* at pp. 1229-1230.) Defendant argues that

*Haynie's* disagreement on this point invalidates *Powell's* conclusion that the subdivision does not incorporate a personal waiver requirement.[9]

Defendant's reliance on *Haynie* is misplaced. Notwithstanding its disagreement on the "codification" point, *Haynie* agreed with *Williams* that the subdivision did not incorporate all constitutional protections. More importantly, the *Haynie* court agreed with *Powell* that the subdivision did not incorporate the personal waiver requirement. (*Haynie, supra,* 116 Cal.App.4th at pp. 1229-1230.) Thus, *Haynie* does not undermine *Powell's* conclusion.

In sum, we conclude that neither subdivision (b)(4) nor (b)(7) in section 1026.5 require a personal jury waiver by an NGI. Rather, counsel also may waive a jury trial at an NGI's direction, with his or her consent, or on behalf of an NGI who is not sufficiently competent to do so. Accordingly, we reject defendant's claim that the court erred in not obtaining his personal waiver and accepting counsel's waiver on his behalf.

Even if we assume that section 1026.5, subdivision (b) required a personal waiver, the court's failure to obtain defendant's waiver would not compel reversal. It is settled

[9] In *Williams*, the court explained that "Penal Code section 1026.5 was enacted in 1979, as emergency legislation in response to the California Supreme Courts decision of *In re Moye* [(1978) 22 Cal.3d 457]. Prior to *In re Moye*, individuals committed to state hospitals after having been acquitted by reason of insanity were committed for an indefinite period of time. *In re Moye* concluded that equal protection principles mandated that such individuals be released after they had been committed for a period of time equal to the maximum state prison sentence which they could have received for the underlying offense. Faced with the imminent release of many potentially dangerous individuals, the legislature adopted Penal Code section 1026.5 to provide for a maximum term of commitment, together with the possibility of successive two-year recommitments for dangerous individuals. At the same time, the statutes relating to mentally disordered sex offenders (MDSO) were amended to provide for virtually identical procedures." (*Williams, supra*, 233 Cal.App.3d at pp. 487-488, fn. omitted.)

We have taken judicial notice of the legislative history of section 1026.5, which confirms *Williams'* summary. (See Evid. Code, § 452, subd. (c).)

We further note that in *Lopez, supra*, 137 Cal.App.3d 1099, the court expanded on the legislative history of section 1026.5 as well as *Williams'* view that it merely codified judicial decisions.

21

that the erroneous denial of a *statutory* right to a jury trial is subject to harmless-error review under the *Watson* test. (*People v. Epps* (2001) 25 Cal.4th 19, 29.) Our analysis and conclusion that the court's failure to advise was harmless applies with equal force to the court's allegedly erroneous failure to obtain defendant's personal waiver. Simply put, given the evidence presented at trial, we do not find it reasonably probable the result would have been more favorable to defendant had the court conducted a jury trial. (E.g., *People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1276 [denial of statutory right to MDO trial harmless].)[10]

Defendant contends that depriving him the right to personally waive a jury trial denied him equal protection in violation of the Fourteenth Amendment. He notes that under the extended commitment scheme in Welfare and Institutions Code section 1800 et seq., minors committed to the Youth Authority (YA) may have their commitment extended if they are deemed dangerous due to mental illness. (See *In re Howard N.* (2005) 35 Cal.4th 117, 122, 126.) Under that scheme, a person is entitled to jury trial on a petition to extend the commitment, and "the trial shall be by jury unless the right to a jury trial is *personally* waived by the person, after he or she has been fully advised of the constitutional rights being waived . . . ." (Welf. & Inst. Code, § 1801.5, italics added.)

Defendant claims that NGIs facing extended commitments because they are dangerous due to mental illness are similarly situated to youthful offenders facing extensions of their commitments for the same reason. He argues that despite being similarly situated, NGIs are treated disparately in that "[they] are not expressly afforded the right to personally waive jury trial" and "courts have interpreted [section 1026.5] to preclude an absolute right to personally waive a jury trial."

---

[10] This is so even if a personal waiver became part of the statute by incorporation under section 1026.5, subdivision (b)(7). Although the procedural safeguard itself would apply, its guarantee would be statutory, not constitutional, and therefore, the *Watson* test would apply.

Although both juveniles and NGIs may face extended commitments because they are dangerous due to mental illness, they are not similarly situated for purposes of an equal protection analysis.

In *In re Lemanuel C*. (2007) 41 Cal.4th 33 (*Lemanuel C.*), the California Supreme Court acknowledged that juvenile offenders and adult SVPs and MDOs may have their commitments extended because they have a mental disorder that renders them currently dangerous. However, the court concluded that juvenile offenders and adult SVPs and MDOs are not similarly situated because the adult commitment schemes were enacted with different purposes in mind than the juvenile scheme. (*Id*. at p. 48.) The court explained that the SVP Act " 'narrowly targets "a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders [who] can be identified while they are incarcerated." [Citation.]' [Citation.] Similarly, the [MDO Act] narrowly targets adult prisoners whose 'severe mental disorder was one of the causes of or was an aggravating factor in the commission of the crime for which the prisoner was sentenced to prison.' [Citation.]" (*Ibid*.) Therefore, adults committed under the two schemes are labeled " 'sexually violent predators' or 'mentally disordered offenders' based, in part, upon the nature of their prior convictions in addition to their potential for future dangerousness to others." (*Ibid*.) The juvenile scheme, in contrast, "broadly encompasses all youthful offenders committed to the Youth Authority who, if discharged from that facility, 'would be physically dangerous to the public' because of their mental deficiency, disorder, or abnormality. [Citation.] [The statute] does not stigmatize a youthful offender whose detention is extended under its provisions by labeling him or her a certain type of offender. Significantly, [the scheme] does not narrowly target specific youthful offenders in the Youth Authority based upon the nature of their sustained allegations that resulted in a Youth Authority commitment." (*Ibid.*) For this reason, the court opined that the additional findings that make it harder to commit an adult had no application in juvenile extended detention scheme. Simply put,

"[y]outh [a]uthority wards are distinctly different from more serious adult offenders who have committed violent or sexually violent crimes." (*Ibid*.)

The court concluded by noting that "[t]he Legislature may ' "adopt more than one procedure for isolating, treating, and restraining dangerous persons; and differences will be upheld if justified." [Citation.]' [Citation.] As the Court of Appeal in this case appropriately recognized, '[t]he mere fact that the Legislature has made it more difficult to commit a more serious, adult offender—especially one who faces the stigma of being declared an SVP [or MDO]—does not give rise to an equal protection violation.' " (*Lemanuel C*., *supra*, 41 Cal.4th. at p. 49.)

A similar analysis applies here. The adult NGI scheme applies only to persons who have been found to be insane. Moreover, such defendants are stigmatized by that determination and by their involuntary commitment to a state hospital for treatment of their mental disorders. In contrast, the juvenile scheme applies to all youthful offenders, their initial commitment is not based on a finding of mental illness or insanity, and that commitment does not carry the stigma of being deemed insane or being committed for mental health treatment.

For these reasons, NGIs who have been found insane and committed for treatment are distinctly different from YA wards, and the more restrictive waiver provision in the juvenile scheme has no application. Rather, the distinction justifies a broader waiver provision that not only contemplates personal waivers by NGIs but also permits waivers by counsel on their behalf.

In short, the difference in the waiver provisions under the juvenile and NGI schemes does not give rise to an equal protection violation.

## VII. DISPOSITION

The order extending defendant's commitment is affirmed.

_____
                                    RUSHING, P.J.

WE CONCUR:


_____
          PREMO, J.


_____
          DUFFY, J.[*]


*People v. Mortimer*
**H037530**

---

[*] Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court: Santa Clara County
Superior Court No.: 190802

Trial Judge: The Honorable Gilbert T. Brown

Attorney for Defendant and Appellant
Peter Freiderich Mortimer:

Julia J. Spikes
under appointment by the Court of
Appeal for Appellant

Attorneys for Plaintiff and Respondent
The People:

Kamala D. Harris
Attorney General

Dane R. Gillette,
Chief Assistant Attorney General

Gerald A. Engler,
Senior Assistant Attorney General

Laurence K. Sullivan,
Supervising Deputy Attorney General

Rene A. Chacon,
Deputy Attorney General

*People v. Mortimer*
**H037530**