Filed 11/18/19

**CERTIFIED FOR PARTIAL PUBLICATION**\*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| Conservatorship of the Person and Estate of BRYAN S. | |
| PUBLIC GUARDIAN OF MENDOCINO COUNTY, as Conservator, etc., Petitioner and Respondent, v. BRYAN S., Objector and Appellant. | A156419 (Mendocino County Super. Ct. No. SCUK-LPSQ-13-1685) |

Following a court trial, the court found appellant Bryan S. to be gravely disabled, appointed the Mendocino County Public Guardian/Conservator (public guardian) as his conservator, and imposed legal disabilities on him under the Lanterman-Petris-Short Act (hereafter the LPS Act or Act).[1] On appeal, Bryan first argues that the term of his resulting commitment must be shortened because the trial court unlawfully continued the starting date of his trial. We conclude that Bryan forfeited the argument by failing to object below. Bryan also argues that he had a right under the equal protection clause to refuse to testify at his trial. We reject this argument in the published portion of our opinion and affirm the order establishing a conservatorship.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.A.

[1] The Act is found at Welfare and Institutions Code section 5000 et sequitur. All statutory references are to the Welfare and Institutions Code unless otherwise specified.

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

Bryan was arrested in October 2016 for resisting arrest after sheriff's deputies responded to a woman's call that he yelled at and chased her while she walked her dog. The trial court determined that Bryan was not competent to stand trial. A doctor recommended a treatment plan that included psychotropic medication to restore Bryan to competency, and he was taken to Napa State Hospital for treatment. After treating Bryan for two years, the hospital reported that it was unlikely he would soon regain competency, and it recommended the initiation of conservatorship proceedings.

In October 2018 the public guardian filed a conservatorship petition alleging that Bryan was gravely disabled as a result of a mental disorder. The petition was supported by the report of a clinical psychologist who evaluated Bryan and concluded that he was gravely disabled due to a mental disorder (schizophrenia).

At the first hearing on the petition on November 1, 2018, the trial court appointed the public defender to represent Bryan and granted the request for a temporary conservatorship. The court then scheduled a further hearing on the request for a permanent conservatorship for November 29.

At the November 29 pretrial conference, Bryan's attorney stated that Bryan wished to contest the permanent order and requested a trial. The trial court suggested scheduling the trial for January 28, 2019, and Bryan's attorney agreed to the date without objection. The parties later stipulated that Bryan would appear at trial by video-conference because of concerns that transporting him from his facility in Redding to trial in Ukiah would aggravate Bryan's health issues.

A court trial began as scheduled on January 28, 2019. County counsel called Bryan as a witness with no objection from Bryan's attorney. The clinical psychologist whose report was submitted with the original conservatorship petition also testified, as did Bryan's temporary conservator.

Following testimony and closing arguments, the trial court concluded that the public guardian had established beyond a reasonable doubt that Bryan was gravely disabled as a result of a mental disorder and was currently unable to provide for food, clothing, or shelter.  The court appointed the public guardian as the conservator for a one-year period and issued letters of guardianship.

## II.
### DISCUSSION

Bryan does not challenge the sufficiency of the evidence supporting the conservatorship order.  Instead, he argues two issues that were not raised below.  We conclude that the first issue was forfeited and the second lacks merit.

*A.  Bryan Forfeited His Timeliness Objection.*

The LPS Act provides for the appointment of a conservator for up to one year for a person determined to be "gravely disabled as a result of a mental health disorder." (§§ 5350, 5361.)  "[I]n order to establish that a person is 'gravely disabled,' the evidence adduced must support an objective finding that the person, due to mental disorder, is incapacitated or rendered unable to carry out the transactions necessary for survival or otherwise provide for [the person's] basic needs of food, clothing, or shelter." (*Conservatorship of Smith* (1986) 187 Cal.App.3d 903, 909.)  Bryan contends that the trial court failed to hold trial on this issue in the time mandated by statute, but we conclude that the argument was forfeited because Bryan did not object below to the trial date.

Section 5350, subdivision (d), provides that a proposed conservatee has a right to demand a court or jury trial on whether he or she is gravely disabled, and that such a demand is to be made within five days following the hearing on the conservatorship petition.  (§ 5350, subd. (d)(1).)  Bryan satisfied this provision by demanding a trial at the hearing on November 29, 2018.  The statute further provides that the trial "shall commence within 10 days of the date of the demand, except that the court shall continue the trial date for a period not to exceed 15 days upon the request of counsel for the

3

proposed conservatee." (§ 5350, subd. (d)(2).) Bryan's trial, however, did not begin until about two months after Bryan demanded one.

Bryan claims that he was prejudiced by the failure to hold the trial within the time set forth in section 5350, subdivision (d)(2), because his commitment will not end until January 29, 2019. He points out that if his trial had been timely his commitment would be scheduled to end in early December 2019. He asks us to remedy the error by modifying the period of his conservatorship to end on December 9, 2019.

Bryan's appellate attorney represented in his briefing that "in many parts of the State little effort is made to comply with the timing provisions of section 5350, subdivision (d). Instead, courts schedule[] trials at their convenience without regard to the mandatory provisions of the statute." At oral argument, he further contended that conservatees' trial attorneys are overworked and need more time to prepare, and they therefore have no incentive to raise the issue below and do not share their clients' interest in a speedy resolution. He maintained that the timeliness issue might never be addressed by a reviewing court if forfeiture principles were to be too inflexibly applied. He asks us to recognize the problem even if we cannot fix it.[2]

We decline to do so. We do not share the view that the interests of conservatees and their attorneys are so misaligned that objections to hearing delays can and will never be preserved below. And even if there might be a case in which a reviewing court would find it appropriate to expound on the issue without an objection below, this case is not it. (*Conservatorship of M.M.*, *supra*, 39 Cal.App.5th at p. 501 [conservatee forfeited claim that LPS Act trial was not started in timely manner]; *Conservatorship of Kevin M.* (1996) 49 Cal.App.4th 79, 85, 92-93 [appellant waived objection to untimely trial by failing to object to trial court's unwritten procedure of automatically reserving the right to request a jury trial at any time during the conservatorship].) Because there was no objection below, the record here is undeveloped on the reasons for the delay, whether the delay

---

[2] Bryan's appellate attorney also represented a conservatee in the recently decided *In re Conservatorship of M.M.* (2019) 39 Cal.App.5th 496, which likewise rejected the conservatee's timeliness arguments.

4

prejudiced Bryan, or whether the delay might even have been for Bryan's benefit, such as to allow him to participate by video-conference.

Appellate courts that have addressed a failure to timely hold the conservatorship trial have done so in cases in which objections were raised below. (See *Conservatorship of Kevin M.*, *supra*, 49 Cal.App.4th at p. 86 [appellant objected to trial court's jurisdiction to proceed with trial outside statutory time limits]; *Conservatorship of James M.* (1994) 30 Cal.App.4th 293, 296.) *James M.* is instructive. There, a conservatee's trial counsel agreed to schedule trial for the reappointment of a conservator more than one month after the demand for trial. (*James M.*, at p. 296.) Counsel later objected to a request for a four-day continuance because the conservatee could not be transported on the day of trial due to a snowstorm. (*Ibid.*) On appeal, the conservatee conceded that the original trial date scheduled outside the statutory time limits *by agreement of all parties* would have been proper, and instead challenged only the four-day continuance to which he objected below. (*Id.* at p. 297.) Here, by contrast, Bryan's trial attorney agreed to the trial court's scheduling proposal. The timeliness issue was thus forfeited, and no record on the issue was developed as it was in *James M.* (*Id.* at p. 296.) Given the lack of a developed record, we decline to exercise our discretion to delve into the forfeited timeliness issue.

### B. Bryan Did Not Have a Right to Refuse to Testify Based on Equal Protection Principles.

Bryan next argues that requiring him to testify violated his equal protection rights because others who are subject to different kinds of civil commitments cannot be compelled to testify. Although Bryan again did not raise this issue below, we exercise our discretion to address it because it raises a pure question of law and does not require the resolution of disputed factual issues. (*People v. Dunley* (2016) 247 Cal.App.4th 1438, 1447 (*Dunley*); *People v. Curlee* (2015) 237 Cal.App.4th 709, 715-716 (*Curlee*) [addressing equal protection issue in part to forestall a later claim of ineffective assistance of counsel].) We nonetheless reject Bryan's argument on the merits.

There is no constitutional right to refuse to testify in civil proceedings. (*Cramer v. Tyars* (1979) 23 Cal.3d 131, 137-138.) But "[u]nder both the United States and

5

California Constitutions, a person has the right to refuse to answer potentially incriminating questions put to him or her in any proceeding; in addition, the defendant in a *criminal* proceeding enjoys the right to refuse to testify at all. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.)" (*Hudec v. Superior Court* (2015) 60 Cal.4th 815, 818 (*Hudec*).) Thus, criminal defendants have an absolute right not to testify against themselves, and people who are involved in other proceedings may be compelled to testify but cannot be required to incriminate themselves.

Courts have grappled with the application of these principles to civil proceedings that share some characteristics of criminal proceedings. In *Hudec*, *supra*, 60 Cal.4th at page 818, the Supreme Court held that a person found not guilty of a felony by reason of insanity (NGI) had a *statutory* right to refuse to take the witness stand in civil proceedings to extend the person's commitment. The court based its holding on Penal Code section 1026.5, subdivision (b)(7), which extends to NGI commitment proceedings "the rights guaranteed under the federal and State Constitutions for criminal proceedings" and provides that "[a]ll proceedings shall be in accordance with applicable constitutional guarantees." (*Hudec*, at pp. 818-819.) Because criminal defendants are constitutionally guaranteed the right to be free from the compulsion to testify, the right therefore applies by statute in NGI commitment proceedings. (*Id.* at p. 832.)

Conservatorship proceedings are civil in nature, and it has long been established that "a proposed conservatee cannot refuse to testify at his own conservatorship trial" on the basis of a Fifth Amendment right against self-incrimination. (*Conservatorship of Baber* (1984) 153 Cal.App.3d 542, 550.) Bryan nonetheless insists that he has a right to refuse to testify based on equal-protection principles. He claims that proposed LPS Act conservatees are situated similarly with other classes of people subject to involuntary civil commitments, such as those who face NGI commitment proceedings. According to him, since people in those classes have a right to refuse to testify, proposed LPS Act conservatees should also have one. We are not persuaded.

" ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly*

6

*situated* groups in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citation.] In other words, we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (*People v. McKee* (2010) 47 Cal.4th 1172, 1202 (*McKee*).)

Following *Hudec*, courts have concluded that those subject to sexually violent predator (SVP) and mentally disordered offender (MDO) proceedings are similarly situated to those subject to NGI proceedings for purposes of the testimonial privilege. (*Curlee*, *supra*, 237 Cal.App.4th at p. 720 [SVP proceedings]; *Dunley*, *supra*, 247 Cal.App.4th at pp. 1449-1450 [MDO proceedings].) In *Curlee*, Division Four of this court pointed out that our Supreme Court in *McKee* had found that MDO's and SVP's were similarly situated, for purposes of evaluating whether terms of commitment violated equal protection, because both groups had been convicted of a serious or violent felony and been found beyond a reasonable doubt to suffer from mental disorders that render them dangerous to others. (*Curlee*, at pp. 717-718, citing *McKee*, *supra*, 47 Cal.4th at p. 1203.) The Supreme Court also found that NGI's and SVP's were similarly situated because they had both committed criminal acts but were civilly committed because of their severe mental disorder. (*Curlee*, at p. 718, citing *McKee*, at p. 1207.) *Curlee* reasoned that NGI's and SVP's were similarly situated for purposes of the testimonial privilege, because "[t]he preconditions to commitment are similar: Both groups have committed a criminal act and have been found to suffer from a mental condition that might present a danger to others. . . . The purpose of the commitment is the same: To protect the public from those who have committed criminal acts and have mental disorders and to provide mental health treatment for the disorders." (*Curlee*, at p. 720.) *Dunley* extended this reasoning to MDO's and concluded that NGI's, SVP's, and MDO's were all similarly situated because of the similar preconditions to commitment. (*Dunley*, *supra*, at pp. 1449-1450.)

7

Bryan argues that prospective LPS Act conservatees are similarly situated with NGI's, SVP's, and MDO's, because they are also subject to involuntary civil commitment as a result of their mental health. We acknowledge that all four types of civil commitments focus on whether the subject suffers from a mental disorder. (§§ 5008, subd. (h)(1) [LPS Act defines "gravely disabled" as where person "as a result of a mental disorder" is unable to provide for basic needs], 6600, subd. (a)(1) [SVP is one who has been convicted a sexually violent offense and "has a diagnosed mental disorder" making the person a danger to health or safety or others]; Pen. Code, §§ 1026.5, subd. (b)(1) [extension of term of commitment for NGI only if person who has "mental disease, defect, or disorder" that represents substantial danger of physical harm to others], 2962, subd. (a)(1) [involuntary civil commitment as condition for parole of MDO, defined as prisoner with "severe mental disorder"].) But LPS Act conservatees, unlike those facing NGI, SVP, or MDO commitment proceedings, need not have been found to have committed a crime or be a danger to others. (Cf. *Dunley*, *supra*, 247 Cal.App.4th at p. 1448.) As a result, there are far more placement options for conservatees, and these options include non-institutional settings. Courts must determine the least restrictive and most appropriate placement for conservatees, which includes placing them with family or friends. (§ 5358, subds. (a)(1)(A), (c)(1).)

These differences are fatal to Bryan's equal protection claim. As our Supreme Court has explained, there is "no similarity between the aims and objectives of the [LPS Act] and those of the criminal law. . . . 'The commitment is not initiated in response, or necessarily related, to any criminal acts.' " (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1015; see also *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 543 [because criminal defendants and LPS Act conservatees are not similarly situated, no constitutional right to independent review in appeal from imposition of LPS Act conservatorship where appointed counsel finds no arguable issues].) Again, the purpose of civil commitments for NGI's, SVP's, and MDO's is to protect the public from people who have been found to be dangerous to others and who need treatment for a mental disorder. (*Dunley*, *supra*, 247 Cal.App.4th at pp. 1448-1449.) By contrast, the primary

8

purposes of the LPS Act are to provide prompt evaluation and treatment of persons with mental health disorders; to provide such people with individualized treatment, supervision, and placement services; and to encourage the use of all resources to accomplish these objectives.  (§ 5001, subds. (b), (e), (f); *Susan T.*, at pp. 1019-1020.) "We cannot overemphasize the importance of recognizing that a prospective conservatee is not a criminal defendant but, in many cases, a person in dire need of the state's assistance."  (*Conservatorship of Baber*, *supra*, 153 Cal.App.3d at p. 550.)  True, one objective of the LPS Act is to "guarantee and protect public safety" (§ 5001, subd. (c)), but the Act was also enacted to protect persons with mental health disorders "*from* criminal acts.*"  (*Id.*, subd. (g), italics added.)

The absence of a similar connection with the criminal justice system is directly relevant to whether LPS Act conservatees are similarly situated to the other three types of offenders *with respect to the law in question*.  (*McKee*, *supra*, 47 Cal.4th at p. 1202.)  "As expressed by the highest authority, the historic purpose of the privilege against being called as a witness has been to assure that the *criminal* justice system remains accusatorial, not inquisitorial.  [Citations.]  The extension of the privilege to an area outside the criminal justice system . . . would contravene both the language and purpose of the privilege."  (*Cramer v. Tyars*, *supra*, 23 Cal.3d at pp. 137-138.)  *Hudec* concluded that NGI's had the right to refuse to testify because of the statutory guarantee of all constitutional rights afforded in *criminal* proceedings (Pen. Code, § 1026.5, subd. (b)(7)).  (*Hudec*, *supra*, 60 Cal.4th at p. 832.)  This right was extended on equal protection grounds to those facing SVP and MDO commitment proceedings because, among other things, they likewise were found to have committed crimes.  Because LPS Act conservatees are not similarly situated, equal protection does not require that they be free from the compulsion to testify.

Although we hold that Bryan did not have the right under the equal protection clause to refuse to testify, our "holding does not, in any way, intimate that a prospective conservatee will be compelled to answer questions which may incriminate him in a criminal matter."  (*Conservatorship of Baber*, *supra*, 153 Cal.App.3d at p. 550.)  Bryan

9

does not argue that county counsel asked questions that led to incriminating testimony, and the public guardian does not claim it was entitled to elicit such testimony.  Bryan's constitutional rights were not violated.

## III.
### DISPOSITION

The order establishing a conservatorship is affirmed.

_____

Humes, P.J.


WE CONCUR:



_____

Banke, J.




_____

Sanchez, J.








_Conservatorship of the Person and Estate of Brian S._  A156419


11

Trial Court:

      Superior Court of the County of Mendocino


Trial Judge:

      Hon. Jeanine B. Nadel


Counsel for Objector and Appellant:

      Rudy Kraft, under appointment by the Court of Appeal


Counsel for Petitioner and Respondent:

      Katharine L. Elliott, County Counsel, County of Mendocino

      Charlotte E. Scott, Deputy Counsel, County of Mendocino


*Conservatorship of the Person and Estate of Brian S.* A156419