Filed 6/16/15  P. v. Shehee CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GREGORY ELL SHEHEE,<br><br>    Defendant and Appellant. | B248097<br><br>(Los Angeles County<br>Super. Ct. No. ZM004373) |

THE COURT:[*]

Gregory Ell Shehee appeals from the February 4, 2013 judgment and order committing him as a sexually violent predator (SVP) under Welfare and Institutions Code section 6600 et seq.  On that date, the jury found true the allegation that appellant had a currently diagnosed mental disorder that made him a danger to the health and safety of others in that it was likely he would engage in sexually violent predatory criminal behavior.   The court ordered appellant committed to Coalinga State Hospital for a two-year term.

We appointed counsel to represent appellant on this appeal.  After examination of the record, counsel filed an "Opening Brief" containing an acknowledgment that he had

---

[*]    BOREN, P.J., ASHMANN-GERST, J., CHAVEZ, J.

been unable to find any arguable issues. Appellant's counsel urges that the procedures set out in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*) apply to appeals of SVP proceedings. Counsel requests that we independently review the record, which the court may do at its discretion. (*In re Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 7.)

On October 23, 2014, we advised appellant that he had 30 days within which to personally submit any contentions or issues that he wished us to consider. After being granted extensions of time, appellant filed a supplemental brief on February 6, 2015, arguing that his state and federal rights have been violated. Specifically, he argues: (1) The trial court abused its discretion, the prosecutor committed misconduct, and his attorney was ineffective in admitting evidence of his 1975 juvenile offense, of which he was innocent; (2) Dr. Jack Vognsen and Dr. Dale Arnold made up a false diagnosis of paraphilia NOS for appellant, denying him equal protection and the right to a fair trial; his attorney was ineffective for not investigating properly, and the court abused its discretion by admitting Coalinga State Hospital records; (3) The prosecution violated his state and federal rights by using the Evelyn W. case to mislead the jury and by mixing that case with two non-convictions, i.e., "Cynthia M[.] and Patty," and his counsel was ineffective by not objecting; (4) His counsel was ineffective in failing to submit medical reports on his eyes and back surgery, which would have protected his due process rights; (5) Dr. Vognsen's testimony negatively influenced the jury and his counsel was ineffective in failing to object to testimony appellant threw a bed across a room, which denied him a fair trial, as did the prosecutor's misconduct of reading hearsay interdisciplinary notes at trial; (6) Appellant was severely injured by police officers at the state hospital, who jumped him on him on several occasions; (7) Evidence that could prove his innocence was taken from him and destroyed and he received other punitive treatment and physical assaults resulting in injury, and he was denied a speedy trial; (8) The prosecutor inflamed the jury and committed perjury by stating appellant was untruthful about his eye injuries, and appellant has suffered an ongoing denial of medical treatment; (9) [appellant's No. X] The trial court violated his equal protection rights by

2

compelling him to testify at his trial, and if this issue was forfeited, his counsel was ineffective; and (10) His trial counsel was ineffective because he turned the female jurors against appellant by his "macho man" conversational style and chauvinistic statements, and he acted as a surrogate prosecutor. Also, appellate counsel was ineffective for filing a *Wende* brief.[1]

## I. Procedural History

The district attorney filed a petition for commitment as a sexually violent predator against appellant on January 12, 2001, and an amended petition on March 22, 2001. Appellant filed petitions for writs of habeas corpus on June 18, 2007, and on January 22, 2008. The January 22, 2008 petition was denied on March 14, 2008, in a written order. A January 21, 2010 petition for writ of habeas corpus filed by appellant in pro. per. was denied on January 25, 2010, because appellant was represented by counsel. Appellant's motion to exclude his prior juvenile conviction was denied on January 23, 2013. Jury trial began on January 23, 2013. The jury entered its true finding on February 4, 2013.

## II. Prosecution Evidence

Dr. Dale Arnold, a forensic psychologist, testified at trial that he was one of two independent evaluators who evaluated appellant. He had evaluated appellant six times since 2000 and interviewed him on at least three occasions. His first report was dated January 5, 2001, and the latest one was from September 28, 2012. In all of his six reports on appellant he found him to be a sexually violent predator.

Dr. Arnold testified that appellant committed offenses that are classified as sexually violent offenses on three victims. He committed his first offense when he was a juvenile and forced the victim by threatening him with a knife to orally copulate him twice. He also attempted to sodomize the victim. The victim was under the age of 14. The juvenile petition against appellant was sustained. The second victim was a woman whom he forced into multiple sexual contacts over several hours. Appellant was convicted of rape by force or fear. His third victim was the wife of an acquaintance of

---

[1] Appellant requests, at the end of his supplemental brief, that this court appoint a different appellate attorney to represent him. This request is denied.

3

appellant's. After she had refused to have sex with him three times, he returned to her house and forced her into multiple sexual acts by beating her and threatening her with a barbecue fork. He beat her again when he caught her calling the police after he had left. Appellant was convicted of forcible rape and robbery.

Dr. Arnold diagnosed appellant currently with paraphilia not otherwise specified (NOS), polysubstance dependence and antisocial personality disorder. The basis for the paraphilia NOS diagnosis is appellant's more than 15-year pattern of behavior in which he engaged in deviant sexual acts with at least five different people and continued to do so despite social and legal sanctions. Appellant displayed violent behavior at a young age and has been violent in prison. Test results revealed appellant to be in the high risk category for recidivism. Appellant never showed remorse or empathy toward his victims.

Dr. Jack Vognsen, a clinical psychologist, interviewed appellant five times and wrote eight evaluation statements about him. He diagnosed appellant with paraphilia NOS. Paraphilia is any type of unusual sexual desire. Appellant also has a polysubstance dependence disorder and a severe antisocial personality disorder. The existence of these three disorders is a "dangerous triad." After administering the Hare psychopathy checklist to appellant, Dr. Vognsen gave appellant one of the highest scores he had ever given—38.5 out of 40. Anything over a score of 30 clearly indicates the individual is a psychopath, and a score over 25 indicates a higher risk for sexual reoffending. Dr. Vognsen testified that the use of substances lowers inhibitions and makes an individual more dangerous. Dr. Vognsen believed appellant likely to engage in sexually violent predatory behavior and likely to reoffend. Dr. Vognsen explained the tests he administered to appellant, which revealed appellant to be a high risk.

The People called appellant, who testified that he was sorry about what happened with his first victim. Whatever the police report said, that was what it was. He did not remember using a knife or forcing the boy to orally copulate him. He tried to block everything out. He did not attend classes for sex offenders at Coalinga State Hospital because the program was a failure. His only problem was with the things that were done

4

to him and the resulting anger.[2]  He could not remember exactly what happened with the second victim but he felt sorry for the victim.  He did not rape the third victim.  He pleaded no contest to avoid 186 years in prison.

## III.  Defense Evidence

Dr. Raymond E. Anderson, a clinical psychologist, met with appellant four or five times.  He did not believe appellant had a qualifying diagnosis of a sexual disorder or that he posed a substantial risk to repeat a sexually violent offense.  Appellant suffered from attention deficit hyperactivity disorder (ADHD) and had trouble controlling his behavior.  ADHD was his only current diagnosis, and there had been a recent improvement.  There is no diagnosis of a disorder that leads to rape, and a juvenile offense should not be considered with respect to any adult diagnosis.  Appellant had a criminal, sexual motivation.  The diagnosis given by Drs. Vognsen and Arnold is not an approved diagnosis.  The tests they used, the Static-99 and the Static-2002R were not appropriate for use in SVP cases.

Dr. Vianne Castellano, a forensic clinical psychologist, had dealt with appellant's case for 13 years.  She testified appellant had no current diagnostic condition but she had previously diagnosed him with childhood posttraumatic stress disorder and ADHD.  He does not meet the criteria to be a sexually violent predator.  She did not agree with the paraphilia diagnosis.  Appellant is the product of a chaotic environment with a lack of parenting and extreme violence and disorganization in his community.  Appellant lacked socialization and the skills necessary to function as a heterosexual male during the time frame that his offenses took place.  Since 2008 he has become increasingly socialized and has become a patient advocate and activist.  Appellant is visually impaired, completely blind in the right eye, and has neurological injures, hypertensive heart disease, and spinal stenosis.

---

[2]     Appellant reported having been molested by a relative at the age of five and later by two adult males.

## IV. Appellant's Arguments Are Without Merit

Appellant's juvenile conviction was properly admitted into evidence, since all of the criteria of Welfare and Institutions Code section 6600, subdivision (g) were met, i.e., appellant was 16 years of age or older when he committed the offense, the offense was a sexually violent one, he was adjudged a ward of the court within the meaning of [Welf. & Inst. Code] section 602 because of the offense, and he was committed to CYA. (Welf. & Inst. Code, § 6600, subd. (g).) Appellant's claim of innocence is not relevant to the proceedings below. Furthermore, the petition alleging he committed violations of Penal Code section 288, subdivision (a) (lewd and lascivious acts on a child under 14), Penal Code section 245, subdivision (a) (assault with a deadly weapon), Penal Code section 288a (oral copulation), and Penal Code sections 664 and 286 (attempted sodomy) was sustained, and appellant was committed to the California Youth Authority.

The diagnoses by Drs. Jack Vognsen and Dale Arnold were shown not to be false, although they were disputed by defense witnesses. Dr. Anderson acknowledged on cross-examination that there is a diagnosis called "Paraphilia NOS" in the Diagnostic and Statistical Manual (DSM), which lists all possible diagnoses and the criteria used to make a diagnosis.

No records from Coalinga State Hospital were admitted into evidence, although the examining experts referred to them. The expert witnesses were, like other expert witnesses, entitled to base their opinions on reliable hearsay, including the statements of the patient and other treating professionals, in forming their opinion concerning appellant's mental state. (*People v. Campos* (1995) 32 Cal.App.4th 304, 307.) An expert may rely on otherwise inadmissible evidence if the evidence is of the sort other experts in the field reasonably rely upon. (*People v. Fulcher* (2006) 136 Cal.App.4th 41, 57.) (Evid. Code, § 801.) Furthermore, the jury was instructed that it must decide whether information on which the experts relied was true and accurate, and the jury could disregard any opinion it found unsupported by the evidence. (CALCRIM No. 332.) The jury was told that it could consider hearsay statements relied upon by the experts only for the limited purpose of evaluating their ultimate opinion, and not as proof that the

information relied upon was true. (CALCRIM No. 360.) We presume that the jury followed these instructions. (*People v. Harris* (1994) 9 Cal.4th 407, 431.)

We do not believe the prosecutor used the Evelyn W. case to mislead the jury. The trial court, at defense counsel's urging, had the prosecutor explain the circumstances surrounding the Evelyn W. incident and appellant's subsequent imprisonment after the next incident (the Cynthia incident) which was never litigated and did not result in a new and separate crime. It merely caused him to be found in violation of probation in the Evelyn W. case. No incident with a victim named "Patty" was mentioned at trial.

Appellant has not shown how the admission of his medical reports on his eyes and back would have protected his due process rights. Defense counsel exhaustively exposed appellant's various maladies and surgeries in his examination of Dr. Castellano. Thus, the jury was fully aware of all of appellant's medical conditions.

The references to the interdisciplinary notes at trial show that the notes formed part of the basis of Dr. Arnold's opinion that appellant suffered from antisocial personality disorder. Dr. Vognsen's testimony that appellant threw a bed across the room was no more damaging than other evidence of appellant's conduct in general while incarcerated or at Coalinga State Hospital and did not result in a denial of a fair trial.

The prosecutor did not state appellant was untruthful about his eye injuries. She did make it plain, however, that she challenged his claim that he was nearly blind by asking him if he could see her, if he had been looking at the jurors and helping his attorney in voir dire, and if he was taking notes and reading them. The jury was able to judge for itself if appellant's answers to these questions were truthful.

With respect to appellant's allegations of being injured by hospital police officers, having his documents destroyed, and being denied medical treatment, these issues are not before us and were not issues at the trial on the commitment petition.

With respect to appellant's claim he was denied a speedy trial, in *People v. Litmon* (2008) 162 Cal.App.4th 383, the appellate court stated that although a person alleged by petition to be an SVP has no statutory speedy trial right, such a person nevertheless has a federal due process right "to be heard at a 'meaningful time.'" (*Id*. at p. 399.) The record

shows that appellant alternated between representing himself and being represented by counsel and filed petitions for writs of habeas corpus, leading to many continuances to which he agreed, or which he requested. He waived his right to a probable cause hearing and later demanded such a hearing. In addition, appellant filed many motions, and several continuances were due to medical issues appellant presented to the court. Moreover, these continuances led to the necessity of the People obtaining updated reports from the appointed experts. Appellant was responsible for the delays in going to trial and was not denied a trial within a meaningful time by any action of the State.

We need not reach appellant's argument that the trial court violated his equal protection rights by compelling him to testify at his trial, or that his counsel was ineffective in failing to object. It is true that the California Supreme Court recently held in *Hudec v. Superior Court* (2015) 60 Cal.4th 815 (*Hudec*) that the targets of civil commitment proceedings in not guilty by reason of insanity (NGI) cases cannot be required to testify under Penal Code section 1026.5, subdivision (b)(7).[3] Appellant argues that he is similarly situated to persons committed as NGI's, as well as to juveniles committed under Welfare and Institutions Code section 1800, who also cannot be compelled to testify. (Welf. & Inst. Code, § 1801.5.) He maintains that all civil committees are, for many purposes, similarly situated under equal protection law. He points out that *People v. McKee* (2010) 47 Cal.4th 1172, relied upon in *Hudec*, ruled that SVP's were similarly situated to mentally disordered offenders (MDO's) and NGI's for purposes of equal protection analysis regarding the length of their commitment and the right to a jury trial. (*McKee*, at pp. 1203, 1207.)

In the instant case, appellant's testimony caused him no prejudice. Appellant acknowledges that the appropriate standard is the reasonable probability of a more favorable outcome under *People v. Watson* (1956) 46 Cal.2d 818, since an NGI's right to not testify is statutory, although we would find an absence of prejudice under the standard of *Chapman v. California* (1967) 386 U.S. 18, 24 as well. In his testimony, with

---

**3**     *Hudec* was decided after the "opening brief" was filed on October 23, 2014.

respect to the first and second predicate crimes, appellant was given the opportunity to express remorse, which Dr. Arnold had testified appellant failed to do. Moreover, although appellant said that whatever the police report stated was true, he did not actually admit any of his offenses in the first incident. He said he could not remember anything. He had the opportunity to explain why he had not attended anger management classes and sex offender treatment classes. And although appellant admitted some of his offenses, there would have been no point in denying them, since there was documentary evidence to show appellant had committed these crimes. We do not believe appellant would have received a more favorable outcome if he had not testified.

Finally, appellant's trial counsel was not ineffective. The record definitively shows counsel did not act as a surrogate prosecutor, but rather mounted a vigorous defense. Counsel called two experts to testify against appellant's commitment, and he effectively cross-examined the prosecutor's experts. Counsel gave a skillful closing argument and attempted to point out with remarks regarding his personal life that male attitudes toward women can change.

Furthermore, we conclude appellant received a fair trial, and appellate counsel was therefore not ineffective for filing a *Wende* brief.

We have examined the entire record and we are satisfied that appellant's attorney has fully complied with his responsibilities and that no arguable issues exist. (*Wende*, *supra*, 25 Cal.3d at p. 443.)

The judgment (SVP commitment order) is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.